## JENNINGS & CO., Inc., v. COMMISSIONER OF INTERNAL REVENUE.*

### No. 6636.

Circuit Court of Appeals, Ninth Circuit.
May 31, 1932.

Charles E. McCulloch and Ivan F. Phipps, both of Portland, Or. (Carey, Hart, Spencer & McCulloch, of Portland, Or., of counsel), for petitioner.

G. A. Youngquist, Asst. Atty. Gen., and Sewall Key and F. Edward Mitchell, Sp. Assts. to the Atty. Gen. (C. M. Charest, Gen. Counsel, and Paul E. Waring, Sp. Atty., Bureau of Internal Revenue, both of Washington, D. C., of counsel), for respondent.

Before WILBUR and SAWTELLE, Circuit Judges.

WILBUR, Circuit Judge.

From the findings of fact made by the Board of Tax Appeals, it appears that "the petitioner, an Oregon corporation, in January, 1918, acquired a lease for the 25-year

*Rehearing denied September 8, 1932.

period from March 1, 1908, to and including February 28, 1933, on two improved lots at the southeast corner of Washington and Broadway streets, Portland, Oregon. On February 11, 1920, the petitioner sublet a portion of the leased premises to the Metropolitan 5 to 50¢ Stores, Inc., at a monthly rental of $2,850 during the period from March 1, 1920, to February 28, 1922, and $3,550 during the period beginning March 1, 1922, and ending February 28, 1933." Subsequently the sublease was modified by a written agreement dated December 9, 1921, between the petitioner named as "lessor" and said Metropolitan Stores as "lessee," the pertinent provisions of which were, in substance, that the lessor, in consideration of $42,600, to be paid to it, agreed that the original sublease between the parties should be modified so as to confer on the sublessee the right, with a few specified limitations, to sublet the leased premises, such right of subletting under the terms of the original lease having been made subject to the consent of the lessor and to certain other restrictions which were waived in the modification, and that the provision of the original sublease requiring the sublessee to use and occupy the leased premises as a retail store for the sale of merchandise usually sold in a 5 to 50 cent store should be canceled; and said agreement, among other things, further provided:

"First: Contemporaneously with the execution hereof said lessee pays to said lessor the sum of $8000.00, the receipt whereof said lessor hereby acknowledges, and executes and delivers to said lessor its promissory note in and by which it promises to pay said lessor $34,600 on or before February 1, 1922. The consideration for said $42,600 is the execution by said lessor of this agreement; *and said $42,600 is fully earned by said lessor upon its execution of this agreement and no part thereof is to be applied on or in satisfaction of any of the payments to be made hereafter by said lessee to said lessor under said lease as modified by this agreement.*

"Second: Said lease is hereby so modified that the rentals to be paid by said lessee for and during the last eleven years of the term thereof shall be * * * $3,227 per month, instead of the * * * $3,550 per month provided in said [original] lease." (Italics ours.)

In its findings of fact the Board of Tax Appeals found that petitioner's income in 1921 and for several years prior thereto was derived from the premises referred to above; and that the amount of gross rent returned by petitioner for 1921 was $76,046.25, which sum did not include any part of the $42,600 item; and the Board, including in petitioner's income the sum of $42,292.90, being the amount of that item, less $307.10 representing cash discount on the note given by the sublessee, ordered and decided that there was a deficiency of $19,794.81 in income and profits taxes for the year 1921.

Respondent, in his answer to the amended petition filed below, admitted that the petitioner's income and profits tax returns for 1920, 1919, and 1918 and prior years were made on the basis of actual receipts and disbursements; and further admitted that petitioner's income and profits tax return for the year 1921 was prepared and filed on the accrual basis, and that the books of petitioner were kept on the accrual basis during the year 1921; and, with respect to the allegation that petitioner did not secure permission from the Commissioner to change to the accrual basis for the year 1921, respondent in his answer stated that he neither admitted nor denied said allegation, considering it, as we do, as immaterial with respect to this particular proceeding.

The legal basis for the order and decision appealed from, as it is presented here by the government, is to the effect that the entire amount of $42,600 agreed to be paid to the taxpayer under the agreement of December 9, 1921, and which was actually paid, $8,000 on that date and $34,600 in four payments made in January and February, 1922, was in contemplation of law received by the taxpayer, and accrued to it, in 1921, and was therefore taxable to it as income in that year.

Appellant, the taxpayer, on the other hand, contends that the sums aggregating the $42,600 did not represent income when received, nor did it represent a bonus for making said agreement of December 9, 1921, but represented, strictly, prepaid rentals, earned ratably over the term of the lease, and which, properly, should be accrued and reported over the portion of the leasehold term to which such rentals applied. It appears that they were so accrued and entered in the accounts of the taxpayer, and reported in its income tax return.

As against this contention of appellant is to be noted the above-quoted statement to the effect that "said $42,600 is fully earned." Having thus, for the purposes then in view, characterized the sum in question as then "fully earned," and having further provided that no part of it should be applied on or in satisfaction of any of the rentals subsequent-

ly payable under the lease, the taxpayer in this proceeding seeks to impress upon said payments an intention and a character directly opposed to those attached to them when they were made and received. It is true that the sum of $42,600 is equivalent to the amount of reductions in the aggregate of the monthly installments which by the terms of the original lease had been made payable during the last eleven years of the term demised and which were remitted by the modification. The petitioner seeks to take advantage of this coincidence to claim that the payment of $42,600 was in fact an advancement of the due date of rentals to subsequently accrue under the lease, and that it should be so treated for taxation purposes, notwithstanding the fact that the parties to the lease expressly stipulated to an agreement directly to the contrary. We see no reason and no justification for such a course. While it is true that in levying income taxes the government looks to the substance of the transaction and its practical effect, it does not, for that reason, disregard the essential nature of the transactions of the taxpayer as defined by law or agreement. The explicit designation, by the taxpayer itself and its lessee, of their intention as to what should constitute the nature and purpose of the payments in question, is an element clearly distinguishing the case at bar from the facts in the case of Work v. United States, 261 U. S. 352, 43 S. Ct. 389, 67 L. Ed. 693, cited by appellant as a typical case. There Mr. Justice Taft, delivering the opinion of the court, upon an inquiry into the nature of certain payments generally referred to as "bonuses," which were made in connection with bids for the leasing of mineral rights in tribal Indian lands under act of Congress and departmental rules, held in substance that, having in view the subject-matter and the circumstances under which such payments were made, they were really part of the royalty or rental payable upon the making of such leases, and that the bonus offered at the public auction, while nominally collateral to a bid for a lease with a definite royalty, was in substance and effect a bid increasing the royalty reserved in the written lease for which the bids were offered by a definite cash payment in the way of advance royalty. In that case the term "bonus" as used in connection with the bids for the leases in question had not been defined, and the circumstances were such as to create some uncertainty as to what was really the nature of the payments in question. Here no such uncertainty exists, because the parties to the agreement of December 9, 1921, indicated their intention as to how the payments made thereunder were to be regarded and treated in words so clear and unambiguous as to preclude a contrary interpretation by the parties or by judicial construction.

Apparently as an alternative contention to the one just considered, counsel for petitioner in their brief suggest that, if we adopt the rule which was applied in certain cited decisions of the Board of Tax Appeals and $8,000 were taxed in 1921, and $34,600 in 1922, when said amounts were respectively received by appellant, such a conclusion, while not as truly and justly reflecting the taxpayer's true net income as would the method adopted by the taxpayer in keeping its books of account and preparing its returns, would be far more equitable in its result than the result arrived at by the Board in its decision, and far closer to the previous decisions of the Board and of the courts.

Were it not for the provision of the modification agreement and the consequences flowing therefrom previously discussed herein, the alternative contention of appellant might, under section 213 of the Revenue Act of 1921 (42 Stat. 237) and articles 22 and 23 of Regulations 62 in force in 1921, 1922 and 1923, be entitled to some consideration. In the absence of the provision of modification, the payment of $42,600 might well be regarded in view of "approved standard methods of accounting," as prepaid rentals properly apportionable to the respective years to which such payment by the terms of the original lease related, and entries made in the accounts of the taxpayer following that method of apportionment might be held justified as correctly reflecting income. But the taxpayer and his lessee had, in express terms, at the time the payment was agreed to be made, clearly disclaimed any intention to treat the payment in question as future rentals, and had indicated their desire that it should be treated as an amount fully earned and as not being applicable in satisfaction of any of the payments to be made thereafter by said lessee to said lessor under said lease as modified by the agreement of December 9, 1921. In view of this positive, affirmative action, the entries apportioning the payment in question on the books of the taxpayer as prepaid rentals did not "correctly reflect income," the positive language of the modification agreement requiring that the payment should be given a present effect only. The fact that installments making up payment of the unpaid balance of the $42,600 were not actually paid until January and February, 1922, did not,

in the circumstances here shown, prevent the payment from being regarded and treated, for income tax purposes, as fully accrued in 1921; because, by the agreement of December 9, 1921, the lessee had definitely bound itself to pay the $42,600 as an amount fully earned; and, being so earned, the law required that it be included as income in the recipient's return for that year.

The conclusions thus reached, based upon the clear, controlling language used by the parties to the modification agreement, distinguish the present case in its facts from the decisions of the Board of Tax Appeals, cited by appellant, to the effect that payments in the nature of bonuses under leases were income in the year received, and from the decisions of our Supreme Court and the Court of Appeals of the District of Columbia, cited by respondent. United States v. Anderson, 269 U. S. 422, 46 S. Ct. 131, 70 L. Ed. 347; American Nat. Co. v. U. S., 274 U. S. 99, 105, 47 S. Ct. 520, 71 L. Ed. 946; United States v. American Can Co., 280 U. S. 412, 50 S. Ct. 177, 74 L. Ed. 518; Lucas v. American Code Co., 280 U. S. 445, 50 S. Ct. 202, 74 L. Ed. 538; S. Naitove & Co. v. Com'r, 59 App. D. C. 53, 32 F.(2d) 949–951, certiorari denied 280 U. S. 582, 50 S. Ct. 34, 74 L. Ed. 632; and Evergreen Cemetery Ass'n v. Burnet, 59 App. D. C. 397, 45 F.(2d) 667. Having in mind the circumstances previously reviewed herein under which the payment of $42,600 was by the taxpayer and its lessee constituted a present, consummated earning, freed from the operation of any future contingency that would deprive the taxpayer of its use and enjoyment or the use and enjoyment of any part of it, we hold that the accounts of appellant, treating the payment in question as rentals paid in advance, "accrued and reported ratably over the period of the lease to which it applies," did not clearly reflect appellant's net income for the year 1921 which should have been entered in appellant's accounts and in its return for said year, as including the payment in question, and that therefore the Commissioner of Internal Revenue was justified in disregarding these entries in determining when the obligation accrued to the taxpayer, as is proposed by section 212 (b) of the Revenue Act of 1921 (42 Stat. 227, 237) as follows: " * * * If the method employed does not clearly reflect the income, the computation shall be made upon such basis and in such manner as in the opinion of the Commissioner does clearly reflect the income. * * * "

The order and decision of the Board of Tax Appeals, in effect so holding is affirmed.